UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PIERRE L. BUTLER,<br><br>    Petitioner,<br><br>vs.<br><br>HEDGPETH,<br><br>    Respondent. | No.  2:12-cv-1455-TLN-EFB P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges his conviction for forcible rape, entered against him on May 4, 2010, in the Sacramento County Superior Court.  He seeks federal habeas relief on the grounds that his trial counsel rendered ineffective assistance.  For the reasons set forth below, his application for habeas corpus relief must be denied.

**I. Background**

In its unpublished memorandum and opinion affirming Butler's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Defendant Pierre Lacelle Butler appeals his conviction for forcible rape.FN1  (Pen.Code, § 261, subd. (a)(2).)  He contends the trial court prejudicially erred in admitting evidence of his 1995 rape of M.M. under Evidence Code section 1108 FN2 and abused its discretion in denying his motion to strike his prior convictions under *Romero*.FN3  We shall affirm.

1

> FN1. Defendant was also convicted of conspiracy to bribe a complaining witness (Pen.Code, § 182, subd. (a)(1)) and attempted bribery of a complaining witness (id., §§ 664, 137, subd. (a)). As he does not appeal these convictions, the factual background and procedural history underlying these convictions are not included in this opinion.
>
> FN2. Undesignated statutory references are to the Evidence Code.
>
> FN3. *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).
>
> **FACTUAL AND PROCEDURAL BACKGROUND**
>
> Because of the nature of the claims on appeal, a detailed recitation of the facts is not necessary. In sum, shortly after they met, defendant and A.M. went on a date. What began as a consensual physical encounter between them deteriorated and defendant raped A.M. DNA samples taken from A.M. during the sexual assault exam matched defendant's DNA profile.
>
> Evidence of a prior rape committed by defendant was also admitted at trial. There, defendant and 16–year–old M.M. were at a friend's house, talking in a bedroom. Defendant locked the door, orally copulated, digitally penetrated and raped M.M.
>
> For the current offenses, defendant was charged with two counts of forcible rape (Pen.Code, § 261, subd. (a)(2) - counts one and four), forcible sexual penetration with a foreign object (id., § 289, subd. (a)(1) - count two), and forcible oral copulation (id., § 288a, subd. (c)(2) - count three). It was also alleged defendant had suffered two prior serious felony convictions. (*Id.*, §§ 667, subds. (a), (b)-(i), 1170.12.) The jury found defendant guilty of one count of forcible rape and acquitted him of the other sexual offenses. In bifurcated proceedings, the court also found the prior serious felony allegations true.
>
> Defendant filed a *Romero* motion, which the court denied. Defendant was sentenced to state prison for an aggregate term of 50 years to life, plus five years.

Resp't's Lodg. Doc. 3 at 1-3.

**II.  Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010);

/////

2

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, ___ U.S. ___, 132 S.Ct. 38 (2011); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. *Id.* Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

3

precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[1] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*,131 S. Ct. at 786-87.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

---

[1] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

4

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 131 S. Ct. at 784-85. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." Id. at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, ___ U.S. ___, ___, 133 S.Ct. 1088, 1091 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 131 S. Ct. at 784. This court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible

fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 786. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 131 S. Ct. at 784).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

### III. Butler's Claim of Ineffective Assistance of Trial Counsel

#### A. Arguments of the Parties

##### 1. <u>Allegations Contained in the Petition</u>

Butler's sole claim for federal habeas relief is that his trial counsel rendered ineffective assistance in failing to obtain and introduce into evidence his and the victim's telephone records to demonstrate that they continued to communicate after the sexual assault. ECF No. 1 at 10. Butler explains that he asked his trial counsel to subpoena his cell phone records and the home and cell phone records of the victim because: (1) they would create a "timeline" of phone conversations between Butler and the victim after the date of the assault; (2) they would reveal conversations between the victim and Butler which the victim "never told detectives about and later testified that she did not recall having;" (3) they would corroborate "critical portions" of Butler's trial testimony and contradict "critical portions of the victim's testimony; (4) they would force the victim to explain to jurors why she continued to communicate with Butler if he had raped her; and (5) they would prove that the victim lied when she testified that she called a rape crisis hotline on the night of the assault "and by deductive reasoning also lied about being sexually assaulted." *Id.* Butler claims that trial counsel's failure to obtain these records prevented him from demonstrating that the victim "willingly continued to communicate with me without being asked to do so, or forced to do so." *Id.* at 11.[2]

---

[2] Butler states that the victim consented to everything that occurred on the night of the assault. *Id.* at 20-21. He argues:

6

Butler points out that the victim told detectives she didn't speak with Butler until more than two days after the assault and that she told Butler she didn't want to talk to him and not to call her anymore.[3] *Id.* Butler states, "this was not true and the phone records reveal that the plaintiff [sic] and I continued to talk after the date." *Id.* He explains that he and the victim had several telephone conversations after the assault and that the telephone records would reflect these calls. *Id.* at 11.

At trial, when asked whether Butler called her after the assault to make sure she got home safely, the victim testified that she didn't remember. Reporter's Transcript on Appeal (RT) at 173. When she was asked whether she got a call from Butler "the next day before you went to the funeral," she testified:

> I believe the call that I took from him was after the funeral. If he called before that, I don't remember it. There was a lot going on that day.

*Id.* When asked again whether Butler called her on the day after the assault, she testified:

> I'm not sure if he called me. He might have sent me a text and I may have even received an email from him at work. But I'm not sure if he actually called. I do remember him texting me to ask me if he was mad at me [sic].

> It wasn't until the plaintiff [sic] was confronted with material evidence that factually contradicted her testimony, that she then admitted that after she [said] no I couldn't kiss her, we did kiss and that she had 'let' me kiss her; admitted that when we left the marina and went to the restaurant, she was the one that told me about the restaurant, guided me to the restaurant and never asked to be taken directly to her car; and admitted that her ex-boyfriend was the one that told her she need[ed] to call the police. Had [trial counsel] conducted a reasonable investigation of the phone records prior to trial, I would have had material evidence to confront the plaintiff with that would contradict her testimony that she didn't continue talking to me after the date and that she called a rape crisis hotline on the night of the date.

*Id.* at 21.

---

[3] Butler has attached as an exhibit a document from the Sacramento Police Department which reflects that the victim told detectives she called the police the day after the rape occurred but that they did not arrive at her house until the next day, December 20, 2007. ECF No. 1 at 25. She remembered that Butler called her on "12-20-08" [sic] but she ignored the call. *Id.* Butler then called a second time that day but she told him "not to call, and she wanted no more conversation with him." *Id.*

7

*Id.* at 173-74.  Butler claims that "not having the phone records" prevented him from "refuting" this testimony.  ECF No. 1 at 11.

Butler also notes that the victim told the Oakland police, and testified at trial, that she called a rape crisis hotline from her home after the assault.  *See* RT at 81.  Butler doesn't believe the victim called a rape crisis hotline.  ECF No. 1 at 12.  He notes that the prosecution did not present evidence of any such phone call.  He also notes that the victim gave a number of statements to police which did not contain any mention of calling a rape crisis hotline.  *Id.*

Butler states that his trial counsel told him he had received the subpoenaed telephone records and that they "did not show a call being placed to a rape crisis hotline on the night of the date."  *Id.* at 14.  Despite this favorable evidence, at the next court date counsel told Butler that he would not be introducing the phone records into evidence.  *Id.*  Butler claims that "the phone records likely contained evidence that was exculpatory in nature because if the plaintiff [sic] lied about calling a rape crisis hotline on the night of the date, then the jurors would likely conclude that she also lied about being sexually assaulted."  *Id.*

Butler informs the court that although his trial counsel knew "well in advance of trial" that the telephone records were important, he waited until the first day of trial to ask Butler to sign a release form for those records.  *Id.* at 13.  When Butler asked counsel why he didn't have the records already, counsel allegedly told him "that he had forgotten to subpoena them and we just had to deal with it."  *Id.*  Butler states, and provides support, that his trial counsel subpoenaed and obtained the telephone records three months after the trial concluded.  *Id.* at 23.  Butler argues that this shows counsel did not conduct sufficient investigation prior to or during the trial to allow him to "make an informed decision that the phone records would not benefit the defense."  *Id.*  Butler also argues that counsel's failure to obtain the records earlier belies any suggestion that he made a tactical decision not to use them at trial.  *Id.*

Butler states that the subpoena for the telephone records erroneously requested records for the victim's work telephone instead of her home telephone.  *Id.*  Butler says he knows this because he "use[d] to call the [victim] at that number when I would talk with her at work."  *Id.*
/////

1  Butler claims that this mistake on the subpoena form "is another clear example of [trial counsel's]
2  failure to conduct any form of pretrial investigation." *Id.*
3     Butler explains that he asked his appellate counsel to obtain a copy of the telephone
4  records that were subpoenaed by his trial counsel. *Id.* Appellate counsel subsequently wrote
5  Butler a letter, which included the following::

> I spoke to your trial attorney, James Warden, about this issue. He said that he does not have the records and that the phone company also does not have the records. The prosecution was willing to provide the records in discovery. He made a tactical decision not to admit them and to argue instead that the absence of the records demonstrated that the prosecution did not prove its case. I know that at some point a subpoena duces tecum issued for the records, but there is no indication whether they actually were provided.

11 *Id.* at 28. Butler argues that if his counsel had received the telephone records earlier, he "might
12 well" have decided to introduce them at trial. *Id.*
13    Butler argues that the prejudice from his trial counsel's failure to obtain and introduce the
14 telephone records was exacerbated by the following remarks from the prosecutor during his
15 closing argument:

> We have got cellphone records from Alana. Where are his records showing those calls that he claims he made to her? The only thing we have is to the contrary, that supports what Alana told us, because she has his texts about, I won't bother you anymore.
>
> She said he was leaving messages and trying to call. And she told him she didn't want to see him. He tried to make it seem exactly the opposite. As he's sitting in his living room while his fiancée is sleeping, he's calling to check on her? That makes no sense.

21 RT at 525. Butler argues that these statements "emphasized the importance of having
22 corroboration for my testimony." ECF No. 1 at 11.
23    Finally, Butler argues that his trial counsel's failure to obtain and/or introduce into
24 evidence the telephone records resulted in prejudice because his case was "extremely close." *Id.*
25 at 15-16. He points out that he was acquitted of three of the sex offense charges brought against
26 him. *Id.* at 15.
27 /////
28 /////

1  **2. <u>Respondent's Arguments</u>**

2  Respondent argues that the statements made by Butler's trial counsel during the hearing
3  on Butler's motion for substitute counsel (*Marsden* motion) support the California Superior
4  Court's conclusion that Butler did not suffer prejudice from his trial counsel's failure to obtain the
5  disputed telephone records prior to or during the trial. Respondent has filed a transcript of the
6  *Marsden* hearing, which reflects the following.

7  After the trial had concluded and Butler's trial counsel had filed a motion for new trial,
8  Butler made an oral motion for substitute counsel pursuant to *People v. Marsden*, 2 Cal.3d 118
9  (1970). RT of In Camera Proceeding, pp. 599-607 (Supp'l RT). During the hearing on the
10 *Marsden* motion, Butler told the trial judge that he was dissatisfied with his trial counsel because
11 he had failed to subpoena telephone records which reflected that he and the victim had continued
12 to communicate immediately after the assault, on a voluntary basis, contrary to the victim's trial
13 testimony. *Id.* at 600-02. Butler also explained that the records were necessary to prove that the
14 victim did not call a rape crisis hotline, as she had testified. *Id.* at 602. Butler stated that it was
15 not until the first day of trial that his counsel asked him to sign a subpoena for the telephone
16 records, even though he had asked his counsel to get these records "months before trial." *Id.*

17 Butler's trial counsel responded that he was now in receipt of some phone records,
18 although he did not have records of phone calls from the "land line" at the victim's house. *Id.* at
19 605. Counsel explained his trial strategy with respect to the telephone records as follows:

> I had made – and I believe I made this argument during closing;
> that there was a lack of evidence. And I – because I knew the
> prosecution didn't have the records, because it wasn't provided in
> discovery, I made the decision not to – I made the decision to go
> ahead and argue it as a lack of proof on their part. Basically saying
> it's her word against his word. And that's how I conducted the
> trial.

*Id.* The following colloquy then occurred:

> THE COURT: And now that you have records in your possession,
> I take it with respect to anything you received post trial, if there was
> a basis – obviously, you've been actively pursuing a new trial
> motion – if there was something of material import in terms of
> those records that would have related to the trial, would that have
> been considered in your new trial motion?

10

>MR. WARDEN (petitioner's trial counsel): I have discussed that issue with Mr. Butler. I do not feel it appropriate for me to put my reasons for not –
>
>THE COURT:  Well, the only thing I want to know is was it considered by you?
>
>MR. WARDEN: It was considered. Yes.
>
>THE COURT:  All right.  And so it was something that you considered and – and it was an affirmative decision on your part to include only what is currently contained in your new trial motion?
>
>MR. WARDEN: Yes.
>
>THE COURT:  All right. And I take it that was based on strategic reasons?
>
>MR. WARDEN: It is.

*Id.* at 606. The trial court then denied Butler's motion for substitute counsel. *Id.* at 606-07.

Respondent argues that this exchange supports the state court's decision that Butler's trial counsel made a tactical decision not to attempt to obtain the telephone records but to argue instead that the prosecution had failed to prove the sexual encounter between Butler and the victim was not consensual. ECF No. 15 at 23. He also argues that even if the telephone records contradicted the victim's testimony that she did not speak to Butler after the assault, Butler could not demonstrate that the result of the proceedings would have been different given the substantial evidence against Butler at trial, the fact that Butler had committed a similar crime in the past, and Butler's initial false statements to police that he did not have a sexual encounter with the victim. *Id.* at 24-25.

### 3. Petitioner's Reply

In his traverse, Butler argues that respondent "grossly understates the importance of my cellphone records and the critical role they would have played in the presentation of my defense." ECF No. 17 at 9. He contends the records would "conclusively" show that he and the victim communicated immediately after the assault and again the next day. *Id.* He also argues that trial counsel's failure to obtain these records until after the trial "strongly suggest that his failure to subpoena them prior to trial was a result of ineffectiveness rather than strategic judgment." *Id.* at 14.

**B. State Court Decisions**

Butler first raised his claim of ineffective assistance of counsel in two habeas petitions filed in the Sacramento County Superior Court. Resp't's Lodg. Docs. 6, 8. He attached additional exhibits to his second such petition. *Id.* Both petitions were denied in a reasoned decision on the merits of Butler's claims. Resp't's Lodg. Docs. 7, 9.

Butler then filed two habeas petitions in the California Court of Appeal. Resp't's Lodg. Docs. 10, 12. Those petitions were summarily denied. Resp't's Lodg. Docs. 11, 13. Butler subsequently filed a habeas petition in the California Supreme Court, to which he attached the same exhibits that were attached to his second habeas petition filed in the California Superior Court. The Supreme Court denied that petition with citations to *People v Duvall*, 9 Cal.4th 464, 474 (1995) and *In re Swain*, 34 Cal.2d 300, 304 (1949). Resp't's Lodg. Doc. 15.

In its second decision on Butler's claim of ineffective assistance of counsel, the California Superior Court concluded that Butler was not entitled to habeas relief. The court reasoned as follows:

> A petitioner seeking relief by way of habeas corpus has the burden of stating a prima facie case. (*In re Bower* (1985) 38 Cal.3d 865, 872.) A petition for writ of habeas corpus should attach as exhibits all reasonably available documentary evidence or affidavits supporting the claim. (*People v. Duvall* (1995) 9 Cal.4th 464, 474.) To show constitutionally inadequate assistance of counsel, a defendant must show that counsel's representation fell below an objective standard and that counsel's failure was prejudicial to the defendant. (*In re Alvernaz* (1992) 2 Cal.4th 924, 937.) It is not a court's duty to second-guess trial counsel and great deference is given to trial counsel's tactical decisions. (*In re Avena* (1996) 12 Cal.4th 694, 722.) Actual prejudice must be shown, meaning that there is a reasonable probability that, but for the attorney's error(s), the result would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 694.) A petition alleging ineffective assistance of counsel based on the failure to obtain favorable evidence must show what evidence should or could have been obtained and what effect it would have had. (*People v. Geddes* (1991) 1 Cal.App.4th 448, 454.)
>
> Petitioner's 2010 conviction of rape, conspiracy, and attempted bribery with prior strikes was affirmed on appeal in February 2012 and the petition for review in the Supreme Court is currently pending. Petitioner claims that trial counsel was ineffective for failing to "subpoena and investigate phone records" between Petitioner and the victim to impeach her testimony. However, the attached documents show that defense counsel *did* subpoena the

>phone records in August 2010, albeit after trial apparently for the purpose of investigating a motion for a new trial. (*See* Exhibit B to the petition.) In addition, according to a letter to Petitioner from appellate counsel, trial counsel indicated that he made a *tactical decision* not to present evidence of the phone records. (*See* Exhibit C to the petition.) Petitioner has not shown that trial counsel's decision was unreasonable. Finally, the petition does not include the phone records. Therefore, Petitioner has not shown that counsel's failure to present the evidence, if indeed it was an unreasonable tactical decision, resulted in any prejudice to Petitioner's case.

Resp't's Lodg. Doc. 9.[4]

### C. Applicable Legal Standards

The clearly established federal law for ineffective assistance of counsel claims is *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a *Strickland* claim, a defendant must show that (1) his counsel's performance was deficient and that (2) the "deficient performance prejudiced the defense." *Id.* at 687. Counsel is constitutionally deficient if his or her representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." *Id.* at 687–88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a

/////

---

[4] The Superior Court's first decision on Butler's claim of ineffective assistance of counsel stated, in pertinent part:

>First, there is no evidence to support the claim that counsel failed to investigate the issue of the cell phone records. Petitioner admits that counsel asked Petitioner to sign a subpoena for the release of his phone records. If counsel decided not to seek to admit the records, such a decision would be within counsel's discretion, i.e., a tactical decision. Second, even if counsel unreasonably failed to inquire about or admit the records, Petitioner has not shown that the error resulted in prejudice. The petition does not attach the records in question. Instead, the petition is based merely on Petitioner's belief that the phone records "*might* have contained evidence that was exculpatory in nature." (Petition at p. 6D; emphasis added.) Consequently, he has not shown that subpoenaing and presenting evidence of cell phone records would likely have resulted in a different outcome for Petitioner's case.

Resp't's Lodg. Doc. 7. After the Superior Court issued this decision, Butler apparently filed his second habeas petition and included evidence that trial counsel's subpoena of the telephone records was not issued until after Butler's trial had already concluded.

13

fair trial, a trial whose result is reliable.'" *Richter*, 131 S.Ct. at 787-88 (quoting *Strickland*, 466 U.S. at 687).

A reviewing court is required to make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 669; *see Richter*, 131 S.Ct. at 789. Reviewing courts must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. This presumption of reasonableness means that the court must "give the attorneys the benefit of the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel may have had for proceeding as they did." *Cullen v. Pinholster*, ___ U.S. ___, 131 S.Ct. 1388, 1407 (2011) (internal quotation marks and alterations omitted).

Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Counsel must, "at a minimum, conduct a reasonable investigation enabling him to make informed decisions about how best to represent his client." *Hendricks v. Calderon*, 70 F.3d 1032, 1035 (9th Cir. 1995) (quoting *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994) (internal citation and quotations omitted). *See also Porter v. McCollum*, 558 U.S. 30, 40 (2009) (counsel's failure to take "even the first step of interviewing witnesses or requesting records" and ignoring "pertinent avenues for investigation of which he should have been aware" constituted deficient performance). "A lawyer who fails adequately to investigate, and to introduce into evidence, records that demonstrate his client's factual innocence, or that raise sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance." *Vaga v. Ryan*, 735 F.3d 1093, 1096-97 (9th Cir. 2013) (quoting *Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999)).

On the other hand, where an attorney has consciously decided not to conduct further investigation because of reasonable tactical evaluations, his or her performance is not constitutionally deficient. *See Siripongs v. Calderon*, 133 F.3d 732, 734 (9th Cir. 1998) (*Siripongs II*); *Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998); *Hensley v. Crist*, 67

F.3d 181, 185 (9th Cir. 1995). "A decision not to investigate thus 'must be directly assessed for reasonableness in all the circumstances.'" *Wiggins v. Smith*, 539 U.S. 510, 533 (200) (quoting *Strickland*, 466 U.S. at 691). Furthermore, "'ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case.'" *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001) (quoting *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986)). *See also Rhoades v. Henry*, 638 F.3d 1027, 1036 (9th Cir. 2011) (counsel did not render ineffective assistance in failing to investigate or raise an argument on appeal where "neither would have gone anywhere").

Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S.Ct. at 792.

Under AEDPA, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id.* at 785. "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

**D. Analysis**

Assuming arguendo that Butler's trial counsel rendered deficient performance in failing to subpoena all of the relevant telephone records prior to trial, Butler has failed to demonstrate prejudice. Although Butler speculates that the records would show he and the victim had several phone conversations immediately after the assault, speculation is insufficient to demonstrate prejudice. *See Dows v. Wood*, 211 F.3d 480, 486 (9th Cir. 2000) (no ineffective assistance of counsel where there was no evidence in the record that a helpful witness actually existed and petitioner failed to present an affidavit establishing that the alleged witness would have provided helpful testimony for the defense); *United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987) (appellant failed to meet prejudice prong of ineffectiveness claim because he offered no indication of what potential witnesses would have testified to or how their testimony might have

changed the outcome of the hearing). A prejudice inquiry "must focus on whether the result would have been different in light of the evidence that would have been presented to the jury had [the petitioner's] counsel not been deficient." *Boyde v. Brown*, 404 F.3d 1159, 1179 (9th Cir. 2005). There is no evidence before the court to support such a determination apart from Butler's speculative claim of prejudice.

Even if Butler were to produce telephone records showing that he and the victim spoke on the telephone immediately after the assault, this would have little bearing on the prejudice analysis. The records would not show the content of any conversation, and would therefore not establish whether the victim willingly engaged in friendly conversation with Butler, as he claims. Indeed, the victim testified that she spoke to Butler on the telephone after the encounter but told him that she didn't want to communicate with him anymore. This testimony provided a reasonable explanation for why she would have taken Butler's initial calls and refutes Butler's suggestion that she accepted his calls because nothing untoward had happened between them. In short, evidence that Butler and the victim spoke on the telephone after the assault, without any indication of what was said during those conversations, would have no significant impact on the jury's verdict.

Nor would telephone records necessarily impeach the victim's trial testimony. Contrary to Butler's allegations, the victim did not testify that she didn't speak to Butler immediately after the assault. When asked whether Butler called her to make sure she got home safely, she testified that she didn't remember. RT at 173. She stated that Butler called her and texted her the day after the assault. *Id.* at 90-91. She also testified that it was "hard for [her] to remember details of how many times he called me or things like that." *Id.* at 173. In light of these statements, telephone records confirming telephone contacts between Butler and victim shortly after the assault would not have any impeachment value. In addition, Butler's assertion that the victim did not call a rape crisis center, as Butler claims, is based purely on his speculation as to what the telephone records would show. This is insufficient to establish prejudice.

The court also notes that the evidence against Butler at trial was substantial. Not only did the victim testify as to what occurred, but Butler had a prior conviction for assault using a similar

16

modus operandi and he was convicted of attempting to bribe the victim, a complaining witness. Under the circumstances of this trial, the failure of Butler's trial counsel to obtain and introduce the telephone records into evidence does not undermine confidence in the outcome of the proceedings.

**IV. Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: March 12, 2014.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE